IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRANCOIS S. LEACH, | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 11392 |
| | ) | |
| v. | ) | |
| | ) | Judge John Z. Lee |
| MEGAN J. BRENNAN, | ) | |
| Postmaster General, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER AND OPINION

Plaintiff Francois S. Leach has brought this lawsuit against Defendant Megan J. Brennan, the Postmaster General of the United States ("the Postal Service"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The Postal Service has filed a motion for summary judgment. For the reasons given below, the motion is granted.

### **Background**[1]

Plaintiff Francois Leach, who is black, began working for the United States

---

[1] The following facts are undisputed except where noted. Any properly supported fact that a party disputes without providing "specific references to the affidavits, parts of the record, and other supporting materials relied upon" is deemed admitted. *Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 710 (7th Cir. 2015) (quoting L.R. 56.1(b)(3)(B)).

In addition, Leach has not filed a Local Rule 56.1(b)(3)(C) statement of facts, which is the "*only* acceptable means of . . . presenting additional facts." *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000); *see Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) ("The obligation set forth in Local Rule 56.1 'is not a mere formality.' Rather, '[i]t follows from the obligation imposed by Fed. R. Civ. P. 56(e) on the party opposing summary judgment to identify specific facts that establish a genuine issue for trial.'") (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994)). And, although *pro se* plaintiffs are generally entitled to lenient standards, they are required to comply with local procedural

Postal Service as a mail carrier in 2005. Def.'s LR 56.1(a) Stmt. ¶ 1, ECF No. 35. Leach was a "floater carrier" at the Berwyn, Illinois post office, meaning that he covered delivery routes on days when regular carriers had days off. *Id.*

Leach was required to follow his assigned mail-delivery route from start to finish, unless given authority to deviate from it. *Id.* ¶ 4. He also was required to use the specific delivery method—such as a vehicle, pushcart, or satchel—that was authorized for his route. *Id.* Leach was to report any accidents to a supervisor, regardless of injury or damage. *Id.* He was expected to follow supervisors' orders and instructions, and he could be supervised at any time while performing his duties. *Id.*

Leach was late to work five times between June and December 2011, and he took twelve days of unscheduled sick leave. *Id.* ¶ 6. Leach's supervisor Lawrence Edwards issued a warning letter in December 2011, and Leach admits this was justified. *Id.*

In March 2012, Leach, while wearing a Postal Service uniform and using its vehicle, went grocery shopping while he was supposed to be delivering mail. *Id.* ¶ 7. Leach knew that this was impermissible. *Id.* Berwyn supervisors William Ruona and Charlene Redmon issued a notice of proposed removal. *Id.* After Leach's union

---

rules governing motions for summary judgment. *See, e.g.*, *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006). The Court therefore disregards the additional facts that Leach set forth in his response to the Postal Service's Local Rule 56.1(a) statement of facts, as well as the arguments in his response brief to the extent that they rely on citation to improperly presented facts.

filed a grievance, the notice of removal was rescinded and replaced with a seven-day suspension. *Id*. Leach admits this discipline was justified. *Id*.

Then, from August to December 2012, Leach was late for work three more times and took five days of unscheduled sick leave. *Id*. ¶ 8. In December 2012, Edwards issued a notice of a 14-day suspension. *Id*. Leach's union again filed a grievance, resulting in the suspension being reduced to 10 days. *Id*. The Postal Service also agreed to remove the discipline from Leach's file after one year, provided that he did not face additional discipline during that period. *Id*.

In June 2013, Leach was suspended for 14 days for failing to deliver six pieces of express mail. *Id*. ¶ 9. Leach takes issue with this suspension because the post office was in "disarray" when he left to deliver the mail, and he did not have the express-mail items to deliver. Def.'s Ex. 1, Leach Dep. at 87–91, ECF No. 35-2.

Leach was again late to work four times and took three days of unscheduled sick leave from January to April 2014. Def.'s LR 56.1(a) Stmt. ¶ 10. Edwards issued a notice of a 14-day suspension. *Id*. After Leach's union filed a grievance, it was agreed that the suspension would be removed from Leach's file in November 2014, provided that he incurred no further discipline before then. *Id*.

In September 2014, Edwards issued a notice of removal charging that Leach had failed to obtain delivery confirmation for four packages. *Id*. ¶ 11. Leach disputes the merits of this charge. Leach Dep. at 106–07. The notice was rescinded after the union filed a grievance. Def.'s LR 56.1(a) Stmt. ¶ 11.

Between July and October 2014, Leach was late to work twice more and took four more days of unscheduled sick leave. *Id*. ¶ 12. Edwards issued a notice of removal in November 2014 because of this and because Leach had twice been suspended for attendance issues. *Id*. Leach pulled Edwards aside and "let him know that [Leach knew] it's all about race" and that his supervisors were just "setting [him] up with this discipline . . . ." *Id*. ¶ 16. Edwards responded, "I've got to do what I've got to do." *Id*. The notice of removal was rescinded after a union grievance, and Edwards received a 30-day suspension instead. *Id*. ¶ 12.

Leach told his supervisors at some point that he knew "about all of the patterns of write-ups" and harassment "that were targeted to blacks." *Id*. ¶ 14. When asked to provide an example at his deposition, he testified that black employees were "being constantly overseen" in a way that Caucasians and Hispanics were not. *Id*. He stated that supervisors would "talk down to" black employees at all-hands service talks that all mail carriers attended. *Id*. As an example, Edwards told employees at service talks that "if you don't like this job, you can always go somewhere else" and that "you don't want to be under the microscope." *Id*. The latter comment meant that Edwards would be "looking at you every day, checking everything that you do and every position that you may be in while you're in the street or in the office." *Id*.

At one service talk, Edwards told attending carriers that "somebody didn't come back to work on time yesterday." *Id*. ¶ 15. "Everybody" knew this was a reference to Leach because Edwards was looking directly at Leach. *Id*. Leach

4

admits that he had not finished his delivery route on time. *Id*.

On March 9, 2015, Leach scraped the side of a Postal Service van during work, resulting in paint transfer. *Id*. ¶ 17. The next morning, Leach came upon acting supervisor Joshua Zadravetz and mail carrier Daniel Meza, who were discussing the paint on the side of the van. *Id*. ¶ 18. Leach told Zadravetz and Meza that he had caused the paint transfer. *Id*. Leach testified that Zadravetz told him, "don't worry about it . . . it's only paint transfer." *Id*. Zadravetz conducted pre-disciplinary interviews with Leach soon thereafter, at which Leach denied that he was required to report the incident and denied that he had been in an accident. *Id*. ¶ 19. Leach nonetheless admits that he was required to tell a supervisor what had happened. *Id*. ¶ 42. He claimed that he tried to find a supervisor but, because it was after 6:00 p.m., they had all already left. *Id*. He admits, however, that his timesheet shows that he stopped work at 4:02 p.m. that day and that a supervisor's time sheet shows that she was there until well after that. *Id*.

In April 2015, Zadravetz issued a notice of proposed removal stating that Leach had failed to perform his duties safely, had not reported the van incident in a timely manner, and had been subject to prior suspensions. *Id*. ¶ 20. After Leach's union filed a grievance, the removal was rescinded and replaced with a 30-day suspension. *Id*. ¶ 21. Leach was also placed on a "last chance agreement" for one year. *Id*.

Leach testified that, on June 2, 2015, Edwards and Zadravetz closely observed him for more than 45 minutes as he organized his mail for delivery. *Id*. ¶ 23. He

5

also testified that supervisors refused to assign entry-level carriers to his routes that summer, resulting in an "overwhelming" workload for him. *Id.* ¶ 24.

On July 30, Zadravetz and Sebastian Lopez (the officer-in-charge of the Berwyn post office) observed Leach doing mail route 33 out of order. *Id.* ¶ 25. Leach admits this. Leach Dep. at 168–76. When asked about it, Leach told Zadravetz and Lopez that he always delivered the last part of the route first, in order to avoid traffic. Def.'s LR 56.1(a) Stmt. ¶ 26. Leach admitted to Lopez that "no one" had authorized him to deliver the route out of order, nor had he told anyone in management about it. *Id.* Prior to this incident, Lopez had regularly instructed the carriers during morning meetings that they could not deviate from their routes without authorization. *Id.* At his deposition, Leach could not recall whether Edwards had authorized him to do route 33 out of order but surmised that this was acceptable because he had received such permission for another, similar route. *Id.* ¶ 44.

The next day, Edwards observed Leach using a pushcart to deliver mail on a route that was not authorized for a pushcart. *Id.* ¶ 27. Leach knew this was forbidden, because Edwards had previously told him as much. *Id.*

A week later, Edwards conducted a pre-disciplinary interview with Leach. *Id.* ¶ 28. Leach largely refused to answer Edwards's questions and stated he could not recall much of the events in question. *Id.* Leach did not tell Edwards that he had been authorized to do route 33 out of order, nor did he provide an explanation for

6

using the pushcart. *Id*. Leach also confirmed that he had not notified anyone in management that he delivered one of his routes out of order every day. *Id*.

Edwards issued a notice of proposal removal on August 20, 2015, charging that Leach had violated the last chance agreement by deviating from a designated mail route and using a pushcart without authorization. *Id*. ¶ 29. The notice stated that his three previous suspensions, which had not been expunged, were also taken into account. *Id*. Leach was given ten days to respond to the notice in writing. *Id*.

In his response, Leach stated that he challenged his removal as discriminatory. *Id*. ¶ 30. Leach's employment was formally terminated on September 28, 2015. *Id*. ¶ 33.

Based on these events, Leach brings claims of racial discrimination and retaliation in violation of Title VII. Leach claims that his 30-day suspension for failure to report the van-scraping incident and his ultimate termination for using a pushcart and using an alternate mail route without authorization were both actually due to his race and in retaliation for protected EEO activity.[2] He also claims that Edwards's May 2014 and November 2014 disciplinary actions were not due to Leach's repeated tardiness and excessive sick days, but rather due to his race. Lastly, Leach claims that he was subject to unlawful retaliation when, among other things,

---

[2] Leach's *pro se* complaint leaves unclear the exact contours of his claims. ECF No. 7. But Leach agrees with the Postal Service's characterization of his claims based on his interrogatory responses, Def.'s LR 56.1(a) Stmt. ¶ 39–41. He also lists a number of additional actions by the Postal Service that he alleges were retaliatory. Pl.'s Resp. Def.'s LR 56.1(a) Stmt. ¶ 41, ECF No. 41; Pl.'s Resp. at 10, ECF No. 40.

7

Edwards singled him out at a service talk, when Edwards and Lopez overburdened him with work by failing to assign supporting carriers during a certain time period, and when supervisors closely observed him in the summer of 2015.

## **Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). The evidence considered for summary judgment "must be admissible if offered at trial, except that affidavits, depositions, and other written forms of testimony can substitute for live testimony." *Malin v. Hospira, Inc.*, 762 F.3d 552, 554–55 (7th Cir. 2014).

The Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). The Court must not make credibility determinations or weigh conflicting evidence. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

## Analysis

The Postal Service seeks summary judgment as to all of Leach's Title VII race-discrimination and retaliation claims. To avoid summary judgment on his race-discrimination claims, Leach must show that the evidence, considered as a whole, would permit a reasonable fact finder to conclude that his protected status caused adverse employment actions. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). "One of the ways—though not the exclusive way—that [Leach] can make this showing is by using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Johnson v. Chi. Transit Auth.*, No. 14 C 9432, 2017 WL 1105446, at *2 (N.D. Ill. Mar. 24, 2017) (citing *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017)).

"To establish a *prima facie* case of discrimination" under the *McDonnell Douglas* framework, "a plaintiff must offer evidence that: '(1) [ ]he is a member of a protected class, (2) h[is] job performance met [the employer's] legitimate expectations, (3) [ ]he suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff.'" *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012) (quoting *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 750–51 (7th Cir. 2006)).

"An adverse employment action must be materially adverse, not merely an inconvenience or a change in job responsibilities." *Griffin v. Potter*, 356 F.3d 824,

829 (7th Cir. 2004). In other words, the action must "significantly alter[ ] the terms and conditions of the employee's job." *Id.*

Once a *prima facie* case is established, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for its action. *Coleman*, 667 F.3d at 845. "When the employer does so, the burden shifts back to the plaintiff, who must present evidence that the stated reason is a 'pretext,' which in turn permits an inference of unlawful discrimination." *Id.*

Moreover, 29 C.F.R. § 1614.105 requires that federal employees "who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must . . . initiate contact with a [EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." "Failure to do so equates to the violation of a statute of limitations and, notwithstanding extenuating circumstances, would bar a federal employee from pursuing any action against the government for violation of Title VII of the Civil Rights Act of 1964." *Smith v. Potter*, 445 F.3d 1000, 1007 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). The effective date of the action is set at the time the employer (1) executes "a final, ultimate, non-tentative decision to [discipline] the employee"; and (2) "give[s] the employee unequivocal notice of its final [disciplinary] decision." *Flannery v. Recording Indus.*

*Ass'n of Am.,* 354 F.3d 632, 637 (7th Cir. 2004) (internal quotation marks and citations omitted).

In addition, to prevail on a Title VII retaliation claim, a plaintiff must show that (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the two. *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016). The 45-day limitations period imposed by § 1614.105 applies to retaliation claims as well. *See Green v. Brennan*, 136 S. Ct. 1769, 1772 (2016).

## I. May 2014 and November 2014 Suspensions

The Postal Service contends that Leach's claims arising out of his two suspensions in 2014 are time-barred because he failed to contact an EEO Counselor within 45 days. In response, Leach quizzically contends that his claim is not time-barred because it is based upon the *April 2015* proposed removal, which subsequently resulted in a last chance agreement.[3] Pl.'s Resp. at 9.

To the extent that the Postal Service is seeking judgment as to Leach's claims that are based upon the 2014 suspensions, it is correct. As it points out, Leach has not presented any evidence that he ever contacted an EEO Counselor with regard to the May 2014 disciplinary action. Def.'s Mem. Supp. at 11, ECF No. 34. And as to the one in November 2014, Leach brought this to the EEO's attention for the first

---

[3] Leach states that the date was 2014 rather than 2015, Pl.'s Resp. at 9, but this appears to be a typographical error as the proposed removal and subsequent last chance agreement occurred in April and May of 2015.

11

time in February 2016, well outside the 45-day window imposed by § 1614.105. Def.'s LR 56.1(a) Stmt. ¶ 36. The Postal Service is accordingly entitled to summary judgment as to these claims.

## II. Close Supervision

The Postal Service next argues that it is entitled to summary judgment as to Leach's claim that his supervisors were overseeing him too closely between June and August 2015. The Postal Service contends that this does not amount to an adverse employment action, Def.'s Mem. Supp. at 12, and Leach offers no argument in response. *See* Pl.'s Resp. at 8.

"Not everything that makes an employee unhappy is an actionable adverse action." *Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1111 n.7 (7th Cir. 1998) (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996)). Moreover, "[a]n employer can micro-manage . . . as much . . . as it wishes." *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 466 (7th Cir. 2004). As such, no reasonable jury could conclude that close supervision amounted to an adverse employment action. That is particularly so when, as here, it is undisputed that Leach had incurred a number of prior disciplinary actions that he admits were justified. Def.'s LR 56.1(a) Stmt. ¶¶ 6, 7. Moreover, he himself has acknowledged that, as part of his job responsibilities, he could be closely supervised at any time. *Id.* ¶ 4. The Postal Service is thus entitled to summary judgment as to this claim.

**III. Edwards's Singling Out Leach at All-Hands Meeting**

Defendant also argues that Edwards's purported singling out of Leach at an all-hands meeting was not an adverse employment action. Recall that, at a morning "service talk," Edwards told all of the carriers that "somebody didn't come back to work on time yesterday," that they wouldn't "want to be under a microscope," and that they could work somewhere else if they didn't want to follow the rules. Def.'s LR 56.1(a) Stmt. ¶¶ 14–15. "Everybody" knew this was a reference to Leach because Edwards was looking directly at Leach. *Id.* ¶ 15.

Here too Defendant is correct. "General hostility and comments do not qualify as actionable adverse employment actions unless the hostility was severe and pervasive." *Griffin*, 356 F.3d at 829. No reasonable jury could conclude that these isolated, indirect comments qualified as severe and pervasive.

And even if these comments constituted an adverse employment action, Leach cannot make out a *prima facie* race-discrimination case under the *McDonnell Douglas* framework or the holistic *Ortiz* approach, 834 F.3d at 765. Leach admits that he had not finished his delivery route in a timely fashion when Edwards singled him out. Def.'s LR 56.1(a) Stmt. ¶ 15. Moreover, Leach points to no evidence of similarly situated individuals outside the protected class who were similarly derelict in their duties but were not verbally castigated. Thus, no reasonable jury could conclude that Edwards's statements were based on anything other than Leach's failure to meet the Postal Service's legitimate performance expectations. The Postal Service is

13

accordingly entitled to summary judgment as to Leach's retaliation and race-discrimination claims based upon Edwards's comments at the all-hands meeting.

## IV. Assignment of Extra Work to Leach

The Postal Service also seeks summary judgment as to Leach's claim that it refused to assign supporting mail carriers to his routes in the summer of 2015. The Postal Service argues that, to the extent that this took place, it resulted in mere inconvenience to Leach, rather than an adverse employment action. Def.'s Mem. Supp. at 12–13. In response, Leach merely argues that the Postal Service created an "overwhelming workload." Pl.'s Resp. at 8. But Leach does not point to any evidence (or even argue) that any increase in workload was imposed because of his race or retaliation, that it was designed as a pretextual means for him to fail, or that others outside the protected class were not assigned a comparable level of work. Thus no reasonable jury could conclude that the increase in Leach's workload was the result of race discrimination or retaliation. *See Ortiz*, 834 F.3d at 765 (reiterating that the key question for Title VII claim is "simply whether the evidence would permit a reasonable factfinder to conclude that" the plaintiff's race "caused the discharge or other adverse employment action"); *Hoppe v. Lewis Univ.*, 692 F.3d 833, 842 (7th Cir. 2012) (explaining that plaintiff claiming retaliation must at least point to evidence of a "causal link" between protected activity and the adverse action). The Postal Service is thus entitled to summary judgment as to this claim.

## V. Leach's 30-Day Suspension for Damage to the Van

14

The Postal Service next seeks summary judgment as to Leach's claim that his 30-day suspension for damage to the Postal Service's van was retaliatory and based on his race. Leach admits that he was required to tell a supervisor what happened, Def.'s LR 56.1(a) Stmt. ¶¶ 42, 4, but that he did so only the next day, when he saw a supervisor reviewing the damage, *id.* ¶ 18. And he does not challenge the propriety of the reporting requirement in any way.

As such, Leach cannot show that he was meeting his employer's legitimate business expectations when he failed to report the incident when it happened. This "doom[s]" his *prima facie* case under the *McDonnell Douglas* framework. *See Khowaja v. Sessions*, 893 F.3d 1010, 1015 (7th Cir. 2018) (plaintiff's failure to adduce evidence that he satisfied employer's legitimate expectations meant that his "*prima facie* case fail[ed] at the onset*").

What is more, under the holistic *Ortiz* analysis, a jury could not reasonably conclude that this suspension was rooted in anything other than Leach's failure to timely report damage to his employer. *See Chimis v. Peoples Gas Light & Coke Co.*, No. 16 CV 9275, 2018 WL 3619370, at *6 (N.D. Ill. July 30, 2018) (plaintiff's failure to establish that he met employer's legitimate expectations foreclosed establishing causation element of retaliation claim). The Postal Service is thus entitled to summary judgment as to Leach's retaliation and race-discrimination claims based upon his 30-day suspension arising out of the incident involving the Postal Service van.

15

## VI. Termination of Leach's Employment

The Postal Service also seeks summary judgment as to Leach's claim that its termination of his employment was retaliatory and based on his race. According to the Postal Service, it terminated Leach for other, performance-related reasons. For example, the Postal Service points to the fact that Leach was observed delivering mail on route 33 out of order. Def.'s LR 56.1(a) Stmt. ¶ 29. Leach admits that this is true, Leach Dep. at 168–76, and that, prior to this, Lopez had regularly instructed carriers that they could not deviate from their routes without prior authorization, Def.'s LR 56.1(a) Stmt. ¶ 26. Moreover, Leach admits that, when Lopez asked him who had authorized him to deliver the route out of order, Leach said "no one." *Id*. At his deposition, Leach could not recall whether Edwards had authorized him to do route 33 out of order, but surmised that this was acceptable because he had received such permission for the similar route 34. *Id*. ¶ 44. But Leach admits that he was required to follow his assigned mail-delivery route from start to finish unless given authority to deviate from it. *Id*. ¶ 4.

The second purported reason why the Postal Service terminated Leach's employment was that he was observed using a pushcart to deliver mail on a route for which this was not authorized. Def.'s LR 56.1(a) Stmt. ¶ 29. He admits that this, too, is true, and that he knew it was forbidden. *Id*. ¶ 27.

Because Leach has failed to establish that he met the Postal Service's legitimate expectations, under the *McDonnell Douglas* framework, his *prima facie* case "fail[s] at the onset." *Khowaja*, 893 F.3d at 1015.

What is more, examining the evidence as a whole leads to the same conclusion. Leach attempts to offer evidence of similarly situated individuals outside of his protected class, whom he contends received more favorable treatment. For example, Leach claims that a "Hispanic female" mail carrier "was authorized" to use a pushcart at the same location when it was part of a different route. Pl.'s Resp. at 7–8. But Leach does not provide any evidence that the carrier—like Leach—lacked authorization to use a pushcart, but did so anyway. Nor does he provide any evidence that any other carriers were allowed to use a pushcart on the same route as he did, without first obtaining authorization from a supervisor.[4]

What is more, Leach points to no other carrier who was on a "last chance agreement," but was not terminated when he or she committed further infractions. In fact, the only other employee whom Leach identifies with a "last chance agreement" was George Kozdras, a white individual who was terminated in 2009 for failing to maintain a regular schedule. Def.'s LR 56.1(a) Stmt. ¶ 55.

---

[4] Plaintiff cites to the declaration of Daniel Meza, who states that carriers "were never instructed not to use a push cart to complete assigned work on route #32. They were permitted to use a push cart on an unauthorized cart route." Pl.'s Resp. at Ex. L. But, as the Postal Service points out, Meza stops short of stating that he ever used a pushcart without authorization, and his assertion as to what was told other carriers is inadmissible hearsay.

17

Thus, considering the evidence as a whole, the Court concludes that Leach has failed to present any evidence from which a reasonable jury could find that the Postal Service terminated Leach as a result of his race or in retaliation for protected conduct. *See Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 1115 (2017) (applying *Ortiz* analysis to retaliation claims). The Postal Service is accordingly entitled to summary judgment as to Leach's claims based upon his termination from employment.

## VII. Other Retaliatory Actions

Finally, the Postal Service seeks summary judgment as to the remaining actions that Leach claims were retaliatory. Although these claims do not appear in his complaint, Leach states in his response brief and in response to the Postal Service's statement of facts that: (1) management continued to make entries into Leach's personnel file after he was fired; (2) he was ordered to deliver in one day the same volume of Ikea catalogues for which other employees were given three days; (3) he was forced to choose between using a pushcart or leaving mail unsecured to avoid discipline; and (4) after his termination, Lopez announced at an all-hands meeting that Leach had been fired. Pl.'s Resp. Def.'s LR 56.1(a) Stmt. ¶ 41; Pl.'s Resp. at 10–11.

But rather than presenting evidence in support of these claims in his Rule 56.1(b)(3)(C) statement of facts, as he was required to do, Leach only includes them in his response to the Postal Service's Rule 56.1(a) statement of facts. *See* Pl.'s Resp.

18

Def.'s LR 56.1(a) Stmt. ¶ 41; Pl.'s Resp. at 10–11.  This is not a mere technicality because, among other things, this is the only way under the local rules for the Postal Service to respond to them.  And, as previously noted, Leach's "*pro se* status does not excuse him from complying with Local Rule 56.1." *Johnson v. City of Chi.*, No. 15 C 128, 2017 WL 4467475, at *1 (N.D. Ill. Oct. 6, 2017) (collecting cases, including *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.")).  As such, Leach has failed to properly assert the evidence in support of these additional claims, and they cannot survive summary judgment.  *See Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) ("Summary judgment is the 'put up or shut up' moment in a lawsuit.") (citing *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2003)).

## CONCLUSION

For the reasons given herein, Defendant's motion for summary judgment [33] is granted.  Judgment shall enter in favor of Defendant.  This case is hereby terminated.

**SO ORDERED**  ENTER:  9/25/18

_____
**JOHN Z. LEE**
**United States District Judge**